NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-250

CARE AND PROTECTION OF JASPER.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2020, the Department of Children and Families (department) filed a care and protection petition on behalf of Jasper and his half-sibling.[2]  Following a trial, a judge of the Juvenile Court found the mother and the father unfit to care for Jasper, but did not terminate their parental rights.  In 2024, the father, who had been deported to Brazil in 2020, and the department filed motions for review and redetermination. Following a trial -- during which only the mother contested the father's fitness to care for Jasper -- the judge concluded that

---

[1] A pseudonym.

[2] In August 2022, the mother and the unknown or unnamed father stipulated to the termination of their parental rights as to the half-sibling.  The mother entered into an open adoption agreement with respect to the half-sibling, who was eventually adopted by the maternal grandparents.

the father was indeed fit and granted him permanent custody of Jasper.

Appealing from this decision and order,[3] the mother claims that the judge did not properly consider the father's "criminal history" in determining his fitness to care for Jasper, and furthermore, that the judge erred in concluding that the father's permanent custody of Jasper was in Jasper's best interests. Additionally, the mother asserts that Jasper's counsel provided ineffective assistance of counsel. For the reasons herein, we affirm.

Background. We summarize the judge's factual findings, supplemented where needed by undisputed facts in the record. The father was born in Brazil. At sixteen years old, the father moved to the United States where he remained for the next fifteen years. In 2017, the father began his relationship with Jasper's mother, and in August of 2018, the couple married.

Jasper was born in July of 2019. At birth, Jasper was identified as a "substance exposed newborn experiencing neonatal abstinence syndrome," prompting the department's involvement. As of April 2020, the department's case regarding Jasper had

_____

[3] No judgment entered on the docket. The judge's December 12, 2024 decision and order resolved all claims and adjudicated the rights of the parties. We treat that order as a final judgment, as the parties did. See GTE Prods. Corp. v. Stewart, 421 Mass. 22, 24 n.3 (1995).

closed.  In June of 2020, however, the department resumed engagement with the family due to concerns regarding the mother's mental health.  Then, on June 11, 2020, following an alleged altercation between the father and the mother, the father was arrested and charged with assault and battery on a family or household member.  Stemming from this charge, the father was deported to Brazil in August of 2020.

In September of 2020, the mother was involuntarily hospitalized because of mental health concerns while caring for Jasper and Jasper's half-sibling.  Upon the mother's hospitalization, the department filed the present care and protection petition and obtained temporary custody of both children.  A temporary custody hearing was held on October 7, 2020, during which the mother waived her right to a hearing and stipulated to temporary custody of Jasper remaining with the department.  The father did not appear because of his deportation, and thus, the judge ruled that his rights to temporary custody were waived subject to reconsideration.

In December of 2020, the father's attorney moved to withdraw her representation of the father in the assault and battery matter in the District Court, because of a conflict of

interest with the alleged victim, the mother.[4]  On May 13, 2021, the father's successor counsel notified the District Court that she and the prosecutor had agreed that the judge could allow the father to appear by videoconference for removal of his default warrant.  The District Court judge, however, was unwilling to permit the father to appear by videoconference.  On March 21, 2022, another District Court judge denied the father's motion for a bench trial by videoconference and ordered the father to appear in person on August 9, 2022, or have a default judgment entered.  On August 9, 2022, the father appeared by videoconference for the bench trial, as he was denied reentry into the United States; a default warrant issued.  At the time of the review and redetermination hearing, the outstanding warrant remained in place.

    1.  <u>The father's visits with Jasper and the home study</u>.

    Notwithstanding the father's deportation in August of 2020, he consistently visited with Jasper throughout the pendency of the case.  As of December of 2020, Jasper's maternal grandparents -- with whom Jasper was placed following the department's filing of the care and protection petition --

---

[4] The father's successor counsel averred that the conflict of interest arose when the mother recanted her allegations to the attorney.

facilitated videoconference visits between the father and Jasper two to three times per week.

In December of 2021, the department initiated an Interstate Compact for the Placement of Children that included a home study of the father's home in Brazil. In June 2023, a second ICPC was requested. In October of 2023, the department received the updated home study report wherein the father was found to be, inter alia: (1) "available, accessible, and calm" in answering questions; (2) earning income, moving toward financial autonomy, and self-employed at a snack store where he worked six days per week; (3) in good health; and (4) showing no aggressive or violent behaviors. Ultimately, the report concluded that there were "no apparent impediments" to the father's ability to care for Jasper in Brazil.

In September of 2024, the department arranged for Jasper to visit the father in Brazil for a week, during which a "child and adolescent law specialist" (specialist) from Brazil recorded a chronological account of the visit. Per the specialist's report, Jasper was affectionate with the father during the visit, and the father was able to appropriately handle Jasper's anxiety about being away from his maternal grandparents' home in Massachusetts. In the specialist's report, she concluded that the father "has already demonstrated and proven that he is

responsible, an excellent father figure and that he will comply with all legal requirements until the end of this process."

2. Review and redetermination hearing. On January 9, 2024, the father filed a motion for a review and redetermination hearing, which a judge of the Juvenile Court allowed in March of 2024.[5] On November 19, 2024, the judge admitted twenty uncontested exhibits, including the reports from the updated home study and the specialist concerning Jasper's visit to Brazil to see the father. A review and redetermination hearing took place on December 11, 2024, during which the mother appeared in person and the father appeared by videoconference without objection. A settlement agreement between the father, the department, and Jasper was filed with the court, wherein Jasper, through counsel, agreed to withdraw his objection to the award of custody to the father, and the father agreed to a visitation plan for Jasper, Jasper's half-sibling, and the maternal grandparents. The department also stipulated that the father was fit to care for Jasper.

The judge then permitted the mother to present evidence of the father's unfitness. The mother testified that the father

---

[5] The department subsequently filed a motion for review and redetermination seeking termination of the mother's parental rights, which was also allowed by the judge. The department withdrew that motion at the trial in exchange for the mother's stipulation to her current unavailability to care for Jasper.

6

abused her while she was pregnant with Jasper, and that he had choked her in Jasper's presence. The mother also testified that the father bit Jasper when Jasper was three months old. As to the incident which led to the father's arrest (and subsequent deportation), the mother testified that she called the police after the father bit her in their home. Conversely, the father's recounting of the events stated that, during an argument, the mother forced him to exit his vehicle, and when he refused, the mother got angry and called the police.

At the conclusion of the hearing, the judge found that "there was no evidence presented that [the] [f]ather is currently unfit to further the welfare and best interest[s] of [Jasper]" and thus, granted the father permanent custody of Jasper. The mother now appeals.

Discussion. At a review and redetermination proceeding under G. L. c. 119, § 26 (c), "the judge is deciding simply whether to maintain the separation of parent from child." Care & Protection of Erin, 443 Mass. 567, 571 (2005). "The proper focus of inquiry on a [G. L. c. 119,] § 26 [(c)] review is on those facts which have undergone some metamorphosis since the previous order or are newly developed and, in consequence, alter the relationship between the biological parent and the child." Custody of a Minor (No. 2), 22 Mass. App. Ct. 91, 94 (1986). See Adoption of Darlene, 99 Mass. App. Ct. 696, 703 (2021).

7

Assuming, without deciding, that the mother had standing to challenge the father's fitness during the review and redetermination hearing, she was required to show, by clear and convincing evidence, that "[Jasper] [was] still in need of care and protection", which in turn required a "showing that the [father] [was] still unfit and [Jasper's] best interests [were] served by remaining removed from [the father's] custody." Care & Protection of Erin, supra at 572.

"We review the judge's findings with substantial deference, recognizing her discretion to evaluate a witness's credibility and to weigh the evidence," Adoption of Nancy, 443 Mass. 512, 515 (2005), "and reverse [the judge's decision] only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 60 (2011).

1. The father's fitness. The mother first asserts the judge failed to "properly" consider the father's criminal history -- specifically, the instances of domestic violence she alleged during the hearing, and the father's subsequent deportation -- in determining the father's fitness. Having carefully reviewed the record, "[w]e see no basis for disturbing the judge's view of the evidence." Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).

8

To begin, the judge made specific findings addressing each of the mother's claims of domestic violence. With respect to these allegations, the judge found that the mother believed the allegations to be true, but declined to make a finding on the veracity of the mother's belief. Regarding the alleged altercation that led to the father's arrest and deportation, the judge credited the father's version of events; i.e., that the mother demanded the father exit his car during an argument, and, when the father refused, the mother called the police. Based on these findings and credibility determinations, to which we give substantial deference, the judge acted well within her discretion in concluding that the mother failed to prove by clear and convincing evidence that the father was unfit.[6] See Adoption of Quentin, 424 Mass. at 886 & n.3 (no basis for overturning judge's findings of unfitness where arguments "amount to no more than dissatisfaction with the judge's weighing of the evidence and . . . credibility determinations"). See also Adoption of Posy, 94 Mass. App. Ct. at 753-754 (single,

---

[6] In addition to her argument that the father is unfit based on the allegations of domestic violence, the mother contends that the judge erred in her conclusion because the father (1) "has no idea" what grades his other children (from another relationship) are in and (2) does not pay child support for these children. We disagree. Given the judge's findings that the father was sufficiently capable of supporting Jasper's social, emotional, and financial needs, we discern no abuse of discretion regarding the judge's conclusion that the father is a fit parent for Jasper.

9

unadjudicated charge of misdemeanor assault and battery insufficient to support finding of "serious issue with criminal activity").

We are also unpersuaded by the mother's argument that the judge failed to give the father's deportation, and its attendant consequences, adequate weight in determining his fitness. The judge made several findings pertaining to the father's success in "establish[ing] a safe and stable life for [Jasper] in Brazil," as evidenced by the home study and specialist's reports documenting the father's home and work life in Brazil and Jasper's visit. In light of these facts, the father's deportation was insufficient to support a finding of unfitness, let alone clear and convincing evidence of such. See Adoption of Posy, 94 Mass. App. Ct. at 754.

2. Best interests of Jasper. Next, the mother contends that the judge's grant of permanent custody to the father was not in Jasper's best interests. The mother's arguments as to why Jasper's placement with the father in Brazil is not in the child's best interests relate primarily to her claims regarding the father's unfitness, most of which we disposed above. In addition to these arguments, the mother contends that the judge failed to adequately evaluate how the father's permanent custody would affect the bond Jasper had developed with his relatives in the United States, including his maternal grandparents, half-

10

sibling, and the mother.  This contention amounts to little more than a disagreement with the judge's weighing of evidence.  See Adoption of Quentin, 424 Mass. at 886 n.3; Adoption of Lisette, 93 Mass. App. Ct. 284, 295 (2018) ("The judge is not required to view the evidence from the parent's perspective").  Here, the judge considered the father's intent to support the continued connection between Jasper and the maternal grandparents and his half-sibling, as outlined in the settlement agreement.  The father agreed for Jasper to visit the maternal grandparents and half-sibling twice per year, and to facilitate video calls between Jasper and the maternal family once per week.  The judge also noted that, "[w]hile [Jasper] may face difficulties during the transitionary period as he moves to Brazil, the Court finds that [the] [f]ather can adequately support [the child] through this transition."  Based on these findings, we discern no abuse of discretion or clear error of law in the judge's determination that permanent custody with the father was in Jasper's best interests.

3.  Ineffective assistance of counsel.  Lastly, the mother asserts that Jasper's counsel provided ineffective assistance of counsel to Jasper by failing to represent Jasper's position that he wanted to stay in the United States.  As an initial matter, it is doubtful that the mother has standing to claim ineffective assistance of counsel on behalf of Jasper.  See Adoption of

11

Mary, 414 Mass. 705, 713 (1993) (concluding that parent had "no standing to challenge the trial strategy of the children's counsel").

In any event, the mother's argument fails on its merits as she has failed to demonstrate that Jasper's counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer," and, if so, that Jasper's counsel's conduct caused Jasper prejudice. Care & Protection of Georgette, 439 Mass. 28, 33 & n.7 (2003), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Here, where the father was not found to be unfit, there could be no prejudice from Jasper's counsel's failure to advocate for the child to remain in the United States, as such a placement was unfeasible, given the father's residence in Brazil. See Guardianship of Estelle, 70 Mass. App. Ct. 575, 579 (2007) ("if, as the judge decided here, the evidence is insufficient to establish [parental unfitness], a parent's right to the custody of his child must be acknowledged"). Jasper's counsel cannot be faulted for failing to pursue a strategy at trial that was unlikely to prevail. See Adoption of Knox, 102 Mass. App. Ct. 84, 93 (2023) (failure to pursue litigation strategy that was unlikely to succeed cannot

12

amount to ineffective assistance of counsel).

Conclusion.  For the reasons stated herein, we affirm the decision and order of the judge dated December 12, 2024, as amended by her order dated January 10, 2025.

So ordered.

By the Court (Singh, Grant & Tan, JJ.[7]),

*Paul Little*

Clerk

Entered: July 17, 2026.

---

[7] The panelists are listed in order of seniority.